BLUE PEARL PARTNERS, LLC,     )
AND TIFFANY'S         )
BEACH RENTALS, INC.,      )
              )
Plaintiffs,          )
              )
v.             )
              )
MAYOR J. ANDREW SAYRE, IN HIS   )
OFFICIAL CAPACITY AS MAYOR    )
OF THE VILLAGE        )
OF BALD HEAD ISLAND,      )
              )
  Defendant.        )

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

For their verified Complaint, Plaintiffs respectfully state as follows:

## EXIGENCIES REQUIRING TEMPORARY RESTRAINING ORDER

1. While the state has significant power to legislate in the public interest during public health emergencies, "an acknowledged power of a local community to protect itself against an epidemic threatening the safety of all might be exercised . . . in such an arbitrary, unreasonable manner, or might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons." *Jacobson v. Massachusetts*, 197 U.S. 11, 28 (1905).

2. The State of North Carolina, as the entire world, is dealing with the COVID-19 virus pandemic.

3. To deal with the crisis, the North Carolina Governor issued several Executive Orders in good faith attempting to deal with the pandemic.

4.     Many counties and municipalities in North Carolina likewise declared a State of Emergency within their jurisdictions in-line with recommendations included in Governor Cooper's Executive Orders.

5.     While municipalities in North Carolina are generally prohibited under N.C. Gen. Stat. §§ 42A-3(a) & 160A-424(c) from adopting or enforcing any ordinance which would require an owner or manager of a vacation rental to obtain permission from the municipality to lease or rent vacation rental property, the Village of Bald Head Island ("Bald Head Island") issued Proclamations banning certain ongoing short-term vacation rentals and blocking access to Bald Head Island's entire corporate jurisdiction to all but "property owners and residents, business owners and their respective employees and contractors, and municipal employees and contractors."

6.     Bald Head Island's Proclamations have had a harsh and drastic effect on the vacation rental market, which is a lifeblood of the community. Since Bald Head Island is blocking access to its entire corporate jurisdiction, per guidance from the North Carolina Real Estate Commission, property owners and managers of vacation rentals must return all monies received for rentals scheduled to occur while such restrictions are in place.

7.     The conditions, however, have changed in North Carolina, and there is no public health rationale for Bald Head Island's continued draconian measures.

8.     On May 5, 2020, Governor Cooper issued EO 138, which allows short-term vacation rentals, such as at issue in this matter, in the current Phase 1 of North Carolina's economic recovery from the COVID-19 virus pandemic. Additionally, at this time, Bald Head Island allows hundreds of non-residents and non-property owners onto Bald Head Island on a daily basis.

9.     Plaintiffs pledge to practice public health guidelines, including those under EO 138, while engaging in activities permitted under EO 138; however, without any public health rationale, Bald Head Island continues to ban short-term rental operations, which substantially impairs Plaintiffs' ability to perform under their vacation rental agreements with out-of-state residents, deprives Plaintiffs of their right to engage in interstate commerce, and deprives Plaintiffs of their use and enjoyment of recognizable property interests.

10.     "It is well settled that any deprivation of constitutional rights 'for even minimal periods of time' constitutes irreparable injury." *Condon v. Haley*, 21 F. Supp. 3d 572, 588 (D.S.C. 2014) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

11.     As Bald Head Island has gone so far beyond what is reasonably required for the safety of the public in continuing to ban short-term rental operations, immediate injunctive relief is necessary to preserve Plaintiffs' constitutional rights.

## THE PARTIES

12.     Plaintiff Tiffany's Beach Rentals, Inc. ("TBR") is a North Carolina corporation with its principal place of business in Bald Head Island, North Carolina.

13.     Plaintiff Blue Pearl Partners, LLC ("Blue Pearl") is a North Carolina limited liability company with its principal place of business in Wilmington, North Carolina.

14.     Defendant Mayor J. Andrew Sayre, named only in his official capacity, is the Mayor of the Village of Bald Head Island, North Carolina. Pursuant to the Village of Bald Head Island's Code of Ordinances, Sections 8-31 and 8-32, Mayor Sayre is the city official granted authority to proclaim a state of emergency and to impose prohibitions and restrictions specified in Sections 8-33 and 8-38 of the Code of Ordinances.

## JURISDICTION AND VENUE

15. This action raises federal questions under the United States Constitution, specifically the Fifth and Fourteenth Amendments, the Contract Clause, and the Commerce Clause, and is brought pursuant to 42 U.S.C. § 1983.

16. The District Court has subject matter jurisdiction over Plaintiffs' federal claims under U.S. Const., Art. III, § 2, and pursuant to 28 U.S.C. § 1331.

17. This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

18. Venue in this District is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, all Plaintiffs reside in this District, and all Plaintiffs reside in North Carolina.

## FACTUAL BACKGROUND

19. The Village of Bald Head Island, North Carolina, in Brunswick County (sometimes "Bald Head Island") is a municipal body politic and corporate governed by N.C. Gen. Stat. § 160A-1, *et seq.* Bald Head Island is the southernmost of North Carolina's cape islands, located at the confluence of the Cape Fear River and Atlantic Ocean.

20. Bald Head Island is made up of 10,000 untouched acres of beach, marsh and maritime forest preserves and intimate vacation rental neighborhoods, and is accessible by a passenger ferry or private vessel.

21. Short-term vacation rentals are necessary for the continued economic viability of the businesses operating on Bald Head Island.

22.     Memorial Day Weekend has historically been the start of the busiest season for vacation rentals on Bald Head Island.

**Plaintiffs' Vacation Rental Services**

23.     Plaintiff TBP acts as a real estate firm managing forty-two (42) vacation rental properties on Bald Head Island pursuant to the North Carolina Vacation Rental Act under N.C. Gen. Stat. § 42A-1, *et seq.*, acting under a license issued by the North Carolina Real Estate Commission.

24.     TBP and its broker-in-charge have helped guests find rentals and homes on Bald Head Island collectively for more than twenty (20) years.

25.     Through its website that reaches a national audience and other means, including the Haven Magazine, TBP solicits patrons from outside North Carolina for vacation rentals on Bald Head Island. A substantial portion of its vacation rental agreements are with out-of-state residents.

26.     When the out-of-state residents enter into vacation rental agreements with TBP, the out-of-state residents send money across state lines to TBP.

27.     Prior to March 19, 2020, TBP entered into vacation rental agreements with and collected money from approximately thirty-one (31) residents of States outside of North Carolina for vacation rentals scheduled to occur on Bald Head Island between March 29 and May 27, 2020.

28.     Blue Pearl is the owner of the real property and single-family home located at 332 South Bald Head Wynd, Bald Head Island, North Carolina 28461, as evidenced by the Deed duly recorded in Book 4051, Page 1315, Brunswick County Register of Deeds, which Blue Pearl has

Page **5** of **19**

leased as a vacation rental pursuant to N.C. Gen. Stat. § 42A-1, *et seq.*, since at least 2018 ("Blue Pearl's Vacation Rental").

29.    Blue Pearl is in the business of providing vacation rental services on Bald Head Island by leasing Blue Pearl's Vacation Rental, with TBP acting as the real estate firm managing Blue Pearl's Vacation Rental. A substantial portion of the tenants who lease Blue Pearl's Vacation Rental reside outside of North Carolina.

30.    Prior to March 19, 2020, Blue Pearl, through TBP, entered into vacation rental agreements with approximately four (4) residents of States outside of North Carolina for vacation rentals scheduled to occur on Bald Head Island between March 29 and May 27, 2020.

**Executive Orders and Emergency Proclamations by the Village of Bald Head Island**

31.    On March 10, 2020, North Carolina Governor Cooper issued EO 116, which declared a State of Emergency per N.C. Gen. Stat. §§ 166A-19.3 and 166A-19.3(19) for the State of North Carolina due to the public health emergency posed by COVID-19. The State of North Carolina remains under the State of Emergency.

32.    On March 14, 2020, Governor Cooper issued EO 117 prohibiting "mass gatherings" of more than 100 people in a single room or space at the same time for thirty days.

33.    On March 19, 2020, Defendant, as the Mayor of Bald Head Island, issued a Proclamation of State of Emergency ("First Proclamation"). (Exhibit 1).

34.    The First Proclamation discontinued all short-term rental operations. Specifically, the First Proclamation contained the following prohibition and directive:

> **Discontinuance of All Short-term Rental Operations:** All rental agencies and property owners that rent properties on Bald Head Island are instructed to have all current renters, for a rental period of less than 3 months' duration, and their invitees vacate the premises and leave the Island by not later than 2 PM on Sunday,

March 22, 2020. Effective immediately, there will be no new rental occupancies of any nature or duration allowed on the Island.

(Exhibit 1).

35.     The First Proclamation did not define "new rental occupancies," or provide any justification for allowing renters with a rental period of three (3) months or more to remain on Bald Head Island.

36.     The First Proclamation also restricted access to Bald Head Island as follows:

> **Restricted Access:** Only property owners and residents, business owners and their respective employees and contractors, and municipal employees and contractors shall be admitted to the Island after 6:00 PM today, March 19, 2020.

(Exhibit 1).

37.     The First Proclamation did not define "residents" or "business owners" or provide any further guidance as to who was and was not allowed to be admitted to Bald Head Island.

38.     The First Proclamation was set to expire on April 30, 2020 by its own terms.

39.     On March 27, 2020, Governor Cooper issued EO 121, ordering all individuals in North Carolina to stay at home and practice social distancing as much as reasonably possible and permitting individuals to leave their homes "only for Essential Activities, Essential Governmental operations, or to participate in or access COVID-19 Essential Business Operations" as defined in EO 121. Further, EO 121 rescinded and replaced the definitions from his early Executive Orders and defined "mass gathering" as "any event or convening that brings together more than ten (10) persons in a single room or single space at the same time."

40.     On March 30, 2020, Defendant, as the Mayor of Bald Head Island, issued a Proclamation of State of Emergency – First Amendment. The First Amended Proclamation ratified, reaffirmed and continued the First Proclamation. The First Amended Proclamation also

had Construction Restrictions, with the exception of "essential services" listed on an Exhibit A. The Construction Restrictions were set to expire on April 18, 2020. (Exhibit 2).

41.     On April 17, 2020, Defendant, as the Mayor of Bald Head Island, issued a Proclamation of State of Emergency – Second Amendment, which extended the Construction Restrictions until April 20, 2020, but otherwise left all other restrictions in place. (Exhibit 3).

42.     Bald Head Island has issued an electronic Newsletter called "Village's Voice" to communicate with property owners while the State is addressing the COVID-19 pandemic and otherwise. On April 18, 2020, in the Village's Voice, Bald Head Island announced that the Brunswick County Department of Health and Human Services reports no immediate concerns that the healthcare system will be overwhelmed because of COVID-19 related hospitalizations.

43.     Further, in the April 18, 2020 Village's Voice, Bald Head Island indicated that it would be lifting the Construction Restrictions after receiving a proposal offered by contractors, as follows:

> In making the decision to rescind the restriction on construction, Counsel noted that the proposal offered by the contractors places a strong emphasis on social distancing and limiting personal contact with Village residents and staff. Further, based on the Governor's outline for relaxing social distancing and stay at home orders, there is an expectation that at least some limitations will be extended beyond April 29. Therefore, the need to find alternatives to a complete shut-down of construction activities is needed.

44.     The Construction Restrictions expired on April 20, 2020 and have not been reinstated. Since that time, all construction activities have been allowed to resume on Bald Head Island, but the prohibition of short-term rental operations has continued. As a result, there are hundreds of individuals who do not reside on Bald Head Island or own property on Bald Head Island performing construction activities on Bald Head Island on a daily basis.

45. On April 23, 2020, Governor Cooper issued EO 135, extending the mass gathering prohibition of EO 120 and all of EO 121 until May 8, 2020.

46. The Village Council met on April 28, 2020, and a Proclamation of State of Emergency – Third Amendment was issued on April 28, 2020, extending the restrictions in the First Proclamation through and until May 29, 2020, unless otherwise amended or rescinded.

47. On April 27, 2020, TBP and other vacation rental property managers, in a memorandum to the Village Council of Bald Head Island, offered to comply with and requested the Village Council to adopt guidelines, which would allow short-term rentals while protecting the public health pursuant to guidance issued by health agencies such as the CDC.

48. On May 5, 2020, Governor Cooper issued Executive Order No. 138, which began lifting the stay at home order by permitting individuals to leave their homes beginning May 8, 2020 for "Allowable Activities" as defined by the Order. The Governor's office issued clarifications explicitly confirming that under EO 138, short-term rentals are allowed. (Exhibit 4).[1]

49. The Village Council met on May 15, 2020, and despite the Governor's EO 138 which allows short-term rentals, a Proclamation of State of Emergency – Fourth Amendment was issued on May 15, 2020, continuing the prohibition of all short-term rental operations and amending the expiration of the restrictions in the First Proclamation through and until May 27, 2020, unless otherwise amended or rescinded. (Exhibit 5).

50. Both the First Proclamation and the Fourth Amended Proclamation state that the Proclamations are issued pursuant to Chapters 166A and 14 of the North Carolina General

---

[1] https://files.nc.gov/governor/documents/files/FAQs-for-Phase-1-EO-FINAL.pdf

Statutes. Pursuant to N.C. Gen. Stat. § 14-288.20A, violation of such a declaration is a Class 2 Misdemeanor.

51.     The Village Council did not provide any public health rationale for continuing the ban of short-term rental operations or for the disparate treatment of property owners and managers with tenants for a rental period of three (3) months or more, and the Village Council's Fourth Amended Proclamation lacks any basis in fact in these regards.

52.     Since April 20, 2020, Bald Head Island has allowed hundreds of employees and contractors of property owners, residents, and business owners to access Bald Head Island. This includes contractors and their employees constructing homes and other services.

53.     Upon information and belief, there have been no positive COVID-19 diagnosis within the jurisdiction of Bald Head Island.

54.     Further, since May 9, 2020, Bald Head Island's Ferry capacity was expanded to seventy-five (75) passengers per trip with expanded service to the Island, while restrictions, such as requiring face coverings, have been put in place for public health of Ferry passengers.

**North Carolina Real Estate Commission Position Statement and Impact of Proclamations on Plaintiffs**

55.     On April 28, 2020, the North Carolina Real Estate Commission issued a Memorandum regarding N.C. Gen. Stat. §§ 42A-1 *et seq.* and COVID-19 restrictions. The NCREC concluded that "under the VRA, N.C. Gen. Stat. §§ 42A-1 *et seq.*, landlords and real estate brokers must provide refunds to tenants who will no longer be able to use their vacation rental home due to State of North Carolina municipal COVID-19 response measures restricting access." (Exhibit 6).

56.     Due to Bald Head Island's Proclamations, TBR is and has been unable to perform under vacation rental agreements with out-of-state guests for vacation rentals scheduled to occur

from March 29, 2020 to the present. As a result, TBR has already lost over approximately $40,000.00 in commissions and fees for vacation rental agreements with out-of-state residents, a portion of which were for vacation rental agreements for Blue Pearl's Vacation Rental, and will continue to incur additional damages if short-term rental operations are precluded beyond May 27, 2020.

57.     Due to Bald Head Island's Proclamations, the Blue Pearl is currently unable to perform under vacation rental agreements with out-of-state guests.

58.     Due to Bald Head Island's Proclamations, the Blue Pearl lost approximately $18,300.00 in lost rental income from out-of-state residents, and the Blue Pearl will continue to lose rental income from vacation rental agreements entered into with out-of-state residents if short-term rentals are precluded beyond May 27, 2020.

## COUNT 1

### (U.S. Const., Violation of Dormant Commerce Clause)

59.     Plaintiffs re-allege paragraphs 1 through 58 as though fully set forth herein.

60.     On their face, Bald Head Island's Proclamations discriminate against interstate commerce and tenants who are out-of-state residents, including (A) by allowing individuals with long-term rentals of three (3) or more months to remain on Bald Head, and (B) by restricting access to Bald Head to "owners and residents."

61.     Further, Bald Head Island's Proclamations discriminate against interstate commerce by subjecting tenants of vacation rentals to criminal sanctions for exercising their constitutional right to travel and subjecting Plaintiffs to criminal sanctions for exercising their constitutional right to engage in lawful interstate commerce.

62.     The Proclamations, under penalty of criminal punishment, substantially impair interstate commerce, without limitation, by effectively prohibiting Plaintiffs (A) from engaging in lawful interstate commerce with out-of-state residents/ tenants of vacation rentals, and (B) from performing obligations under pre-existing vacation rental agreements with out-of-state residents.

63.     The Proclamations' ban on short-term rental operations and on Plaintiffs' right to engage in lawful interstate commerce with out-of-state residents, while currently permitting hundreds of individuals onto Bald Head Island for construction and other activities, does not serve any legitimate, rational, substantial, important or compelling governmental interest, and other, less restrictive measures could be adopted to further any legitimate or compelling governmental interests.

64.     By reason of the aforementioned acts, policies, practices, and/or proclamations created, adopted, and enforced under color of State law, Defendant deprived Plaintiffs of their rights to engage in lawful interstate commerce without undue governmental restrictions.

65.     This impairment will continue at least through May 27, 2020, and upon information and belief potentially longer, absent declaratory and injunctive relief.

66.     As a direct and proximate result of Defendant's violation of the Dormant Commerce Clause as set forth in this Complaint, the Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, loss of business, loss of good will, and threats to Plaintiffs' business viability, entitling them to declaratory and injunctive relief.

## COUNT 2

### (U.S. Const., Violation of Contract Clause)

67.     Plaintiffs re-allege paragraphs 1 through 66 as though fully set forth herein.

68.     The Contracts Clause of Article I, Section 10 of the United States Constitution states, "No State shall . . . pass any . . . Law impairing the Obligations of Contracts."

69.     Plaintiffs had contracts consisting of vacation rental agreements with private actors for vacation rentals scheduled to occur during the period of March 19, 2020 through May 27, 2020, and thereafter.

70.     The Proclamations' ban on all short-term rental operations from March 19, 2020 through at least May 27, 2020 substantially and unreasonably impaired Plaintiffs' contractual obligations and rights under the vacation rental agreements, making Plaintiffs wholly unable to fulfill the contractual obligations or obtain benefits thereunder.

71.     Especially considering the general prohibition in N.C. Gen. Stat. § 160A-424(c), which prohibits a city from adopting or enforcing any ordinance that requires any owner or property manager to obtain permission to rent their property, the continued impairment of Plaintiffs' contractual obligations and rights does not serve any legitimate, rational, substantial, important or compelling governmental interest, and other, less restrictive measures could be adopted to further any legitimate or compelling governmental interests

72.     By reason of the aforementioned acts, policies, practices, and/or proclamations created, adopted, and enforced under color of State law, Defendant deprived Plaintiffs of their right to contract without undue government infringement guaranteed by Article I, Section 10 of the United States Constitution.

73.     This impairment will continue at least through May 27, 2020, and upon information and belief potentially longer, absent declaratory and injunctive relief.

74.     As a direct and proximate result of Defendant's violation of the Contracts Clause as set forth in this Complaint, the Plaintiffs have suffered irreparable harm, including the loss of

their fundamental constitutional rights, loss of business, loss of good will, and threats to Plaintiffs' business viability, entitling them to declaratory and injunctive relief.

## COUNT 3

### (U.S. Const., Violation of Due Process under Fourteenth Amendment)

75. Plaintiffs re-allege paragraphs 1 through 74 as though fully set forth herein.

76. Under the Fifth Amendment to the United States Constitution, applicable here under the Fourteenth Amendment, no person shall "be deprived of life, liberty, or property, without due process of law."

77. The Proclamations subject Plaintiffs to criminal and civil penalties, but are unreasonably vague, and violate generally applicable North Carolina law.

78. The First Proclamation's prohibition on "new rental occupancies" is unreasonably vague, including because it does not define "new rental occupancies," or whether it applies only to vacation rental agreements entered into on or after March 19, 2020 or also applies to vacation rental agreements entered into before March 19, 2020.

79. The First Proclamation's restriction of access to Bald Head Island to "[o]nly property owners and residents, [and] business owners" is also unreasonably vague, including because it does not define or provide any guidance to determine who is included under the terms "residents" or "business owners," or whether a tenant of a vacation rental is considered a "resident," or if a vacation rental tenant who owns a business outside of North Carolina is permitted onto Bald Head Island.

80. The Proclamations also deprive Plaintiffs of the use and enjoyment of their protected property rights and interests, as well as their right to engage in interstate commerce.

81. The Proclamations effectively ban Plaintiffs from engaging in lawful interstate commerce with out-of-state residents/ tenants of vacation rentals on Bald Head Island.

82. Plaintiffs have a protected property right in their vacation rental agreements, and their contractual rights to monies received under vacation rental agreements for vacation rentals scheduled to occur from March 19, 2020 through at least May 27, 2020, absent the Proclamations.

83. Plaintiff TBR had a protected property right in commissions and fees owed and earned from monies received under vacation rental agreements, which the North Carolina Real Estate Commission has indicated must be returned to tenants due to the Proclamations.

84. Plaintiff Blue Pearl had a protected property right in the use and enjoyment of Blue Pearl's Vacation Rental, including the right to lease Blue Pearl's Vacation Rental to short-term tenants.

85. The Proclamations, especially the Forth Amended Proclamation, do not serve any legitimate, rational, substantial, important or compelling governmental interest, and other, less restrictive measures could be adopted to further any legitimate or compelling governmental interests.

86. Bald Head Island has no legitimate public interest in banning short-term rentals, as per N.C. Gen. Stat. § 160A-424(c), "In no event may a city . . . adopt or enforce any ordinance that would require any owner or manager of rental property to obtain permission from the city to lease or rent residential real property . . . ." This prohibition expressly applies to vacation rentals under N.C. Gen. Stat. § 42A-3(a).

87. Bald Head Island's decision to enact the Proclamations, especially the Fourth Amended Proclamation, was made without any factual basis or public health rationale

warranting a ban on short-term rentals or that such actions were necessary to maintain order or public health.

88.     The Proclamations, especially the Fourth Amended Proclamation, are an arbitrary and capricious deprivation of Plaintiffs' protected property rights and the Plaintiffs' use and enjoyment of their property without due process in violation of the Fourteenth Amendment.

89.     Plaintiffs have no adequate remedy at law, because there is no certain or prompt way to attain the ends of justice without enjoining the continued loss of the use and enjoyment of their protected property interests.

90.     By reason of the aforementioned acts, policies, practices, and/or proclamations created, adopted, and enforced under color of State law, Defendant deprived Plaintiffs of their constitutional right to due process.

91.     This impairment of Plaintiffs' constitutional rights to due process will continue at least through May 27, 2020, and upon information and belief potentially longer, absent declaratory and injunctive relief.

92.     As a direct and proximate result of Defendant's violation of Plaintiffs' rights to due process as set forth in this Complaint, the Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, loss of business, loss of good will, and threats to Plaintiffs' business viability, entitling them to declaratory and injunctive relief.

## COUNT 4

### (U.S. Const., Violation of Equal Protection under Fourteenth Amendment)

93.     Plaintiffs re-allege paragraphs 1 through 92 as though fully set forth herein.

94.     The Fourteenth Amendment prohibits States from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

95. As shown in this Complaint, the Proclamations deprive Plaintiffs of their fundamental rights and freedoms, yet allows others similarly situated, including property owners and managers with tenants for a rental period of three (3) months or more, and employees and contractors of residents and business owners, to access Bald Head Island and engage in commercial activity, including the rental market.

96. Defendant's disparate treatment of Plaintiffs as compared to those similarly situated, burdens Plaintiffs' fundamental rights, without a rational basis or public health rationale, violating the equal protection guarantee of the Fourteenth Amendment, as shown in this Complaint.

97. The Proclamations, especially the Forth Amended Proclamation, do not serve any legitimate, rational, substantial, important or compelling governmental interest, and other, less restrictive measures could be adopted to further any legitimate or compelling governmental interests.

98. By reason of the aforementioned acts, policies, practices, and/or proclamations created, adopted, and enforced under color of State law, Defendant deprived Plaintiffs of their constitutional right to equal protection under the laws.

99. This impairment of Plaintiffs' constitutional rights to equal protection will continue at least through May 27, 2020, and upon information and belief potentially longer, absent declaratory and injunctive relief.

100. As a direct and proximate result of Defendant's violation of Plaintiffs' rights to equal protection as set forth in this Complaint, the Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, loss of business, loss of good will, and threats to Plaintiffs' business viability, entitling them to declaratory and injunctive relief.

WHEREFORE, Plaintiffs respectfully seek the entry of an Order providing as follows:

A)      Granting the Plaintiffs a temporary restraining order and other injunctive relief;

B)      Declaring enforcement of the Proclamations of Bald Head Island against Plaintiffs to be unlawful and/or a violation of the Plaintiffs' rights;

C)      Granting an order preliminarily, and thereafter, permanently enjoining Defendant and Defendant's officers, agents, affiliates, servants, designees, successors, employees, and any other person who are in active concert or participation with any of the foregoing persons from enforcing the Proclamations of Bald Head Island against Plaintiffs;

D)      Entry of judgment for Plaintiffs and against Defendant for deprivation of rights, including an award of damages in an amount to be determined by the Court;

E)      Awarding Plaintiffs' costs and attorneys' fees as authorized by Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and any other applicable law;

F)      Providing and awarding such other and further relief as the Court deems appropriate upon consideration of this matter.

This the 19th day of May, 2020

MCANGUS GOUDELOCK & COURIE, LLC

/s/ Luke A. Dalton
Luke A. Dalton
State Bar No. 41188
1001 Military Cutoff Road, Ste. 310
Wilmington, NC 28405
Telephone: (910) 726-1125
Facsimile: (910) 920-9157
Email: Luke.Dalton@mgclaw.com

/s/ Walt Rapp
Walt Rapp
State Bar No: 31747
Telephone: (910) 726-1124
Email: walt.rapp@mgclaw.com

## VERIFICATION

The undersigned, ~~Scott Jamison~~ hereby certifies that they are duly authorized to execute this verification as the owner or manager of Plaintiff, Blue Pearl Partners, LLC, and states that they have read the foregoing Complaint, knows the contents thereof, and being informed of the contents thereof, certifies that the same is true, except as to matters therein stated on information and belief, and as to such matters he believes them to be true and correct under penalty of perjury as set forth in 28 U.S.C. § 1746(2).

DATE: May 19, 2020

Blue Pearl Partners, LLC

By: Scott Jamison

## VERIFICATION

The undersigned, Tiffany Williams, hereby certifies that she is duly authorized to execute this verification as the owner of Plaintiff, Tiffany's Beach Rentals, Inc., and states that she has read the foregoing Complaint, knows the contents thereof, and being informed of the contents thereof, certifies that the same is true, except as to matters therein stated on information and belief, and as to such matters he believes them to be true and correct under penalty of perjury as set forth in 28 U.S.C. § 1746(2).

DATE: May 19, 2020

Tiffany's Beach Rentals, Inc.

By: Tiffany Williams