UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No.7:20-CV-86-BO

| | |
|---|---|
| BLUE PEARL PARTNERS, LLC, <br> AND TIFFANY'S <br> BEACH RENTALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAYOR J. ANDREW SAYRE, IN HIS <br> OFFICIAL CAPACITY AS MAYOR <br> OF THE VILLAGE <br> OF BALD HEAD ISLAND, <br><br>    Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

NOW COME Plaintiffs, pursuant to Local Rule 7.2, and respectfully submit this Memorandum in support of their Motion for Temporary Restraining Order as follows:

1. Plaintiffs re-allege and incorporate as if fully set out herein all allegations set forth in their Verified Complaint for Declaratory Judgment and Injunctive Relief filed in this matter, particularly the paragraphs detailing the facts of the case and terms and interpretations of Governor Cooper's Executive Order 138 allowing short-term rentals and Defendant's COVID-19 Emergency Proclamations banning short-term rentals and restricting access to Bald Head Island.

2. Plaintiffs understand that state officials were faced with a series of unprecedented crises due to the myriad of unanswerable questions and unresolvable problems COVID-19 poses for the world. Leaders in North Carolina have quickly made many difficult decisions in light of the challenges facing North Carolina and the world.

3. The continued ban of short-term rentals and access restrictions in Defendant's Emergency Proclamations, however, has infringed and continues to infringe upon Plaintiffs' constitutional rights and livelihood. Since Bald Head Island is blocking access to its entire corporate jurisdiction, per guidance from the North Carolina Real Estate Commission, property owners and managers of vacation rentals must return all monies received for rentals scheduled to occur while such restrictions are in place.

4. Plaintiffs are now compelled to challenge the Mayor's Emergency Proclamations that impact their constitutional rights to engage in lawful interstate commerce and to lawfully perform contractual obligations free of undue governmental burdens lacking a public health rationale.

5. As shown in Plaintiffs' Verified Complaint and herein, this case sets forth the, fortunately, rare question of whether Plaintiffs, a vacation rental property owner and manager who want to comply with public health guidelines and Governor Cooper's Executive Orders, may be denied their constitutional right to engage in lawful interstate commerce and lawfully perform their obligations and receive benefits under their lawful vacation rental agreements by a municipality that continues its enforcement of an otherwise impermissible ban on short-term rentals without a basis in fact or public health rationale—all while allowing hundreds of other individuals onto Bald Head Island who are not residents or property owners on Bald Head Island.

6. Plaintiffs, therefore, seek temporary and permanent injunctive relief to be able to engage in constitutionally protected conduct while adhering to public health guidelines.

**Standard for a Temporary Restraining Order**

7. There are four factors this Court must consider when addressing a request to issue a temporary restraining order or preliminary injunction: "(1) the likelihood of irreparable harm to

the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 858-59 (4th Cir. 2001). Per the Fourth Circuit, this Court should first examine the irreparable harm issue, then contemplate the balance of harm between Plaintiffs and Defendant, and finally consider the issue of success on the merits. *Id.*

**Substantial Risk of Irreparable Harm to the Plaintiffs**

8. "It is well settled that any deprivation of constitutional rights 'for even minimal periods of time' constitutes irreparable injury." *Condon v. Haley*, 21 F. Supp. 3d 572, 588 (D.S.C. 2014) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Henry v. Greenville Airport Com.*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right."); *Greater Baltimore Bd. Of Realtors v. Hughes*, 596 F. Supp. 906, 924 (D. Md. 1984) (noting that a loss of constitutional rights satisfies the irreparable injury requirement for injunctive relief). As discussed below, Plaintiffs' Verified Complaint establishes Plaintiffs are being denied constitutional rights. Further, the loss of income and goodwill from Plaintiffs' vacation rental business activities and Blue Pearl's Vacation Rental constitutes irreparable harm necessary of injunctive relief. As such, Plaintiffs have satisfied the irreparable harm element.

**There is No Similar Risk of Irreparable Harm to Defendant**

9. There is no harm to Defendant in refusing to allow Defendant to enforce a ban on short-term rentals. On May 5, 2020, Governor Cooper issued EO 138, which allows short-term vacation rentals, such as at issue in this matter, in the current Phase 1 of North Carolina's economic

recovery from the COVID-19 virus pandemic. Additionally, at this time, Bald Head Island allows hundreds of non-residents and non-property owners onto Bald Head Island on a daily basis.

10. Furthermore, the Governor's Executive Order is still in effect, imposing social distancing and other restrictions on any tenants of vacation rentals. Bald Head Island also remains free to enact permissible and reasonable regulations for the health and safety of residents and tenants, including tenants of vacation rentals, or to impose reasonable public health standards on owners or property managers of vacation rentals based on actual facts and public health rationale.

**Plaintiffs Have a Strong Likelihood of Success on the Merits**

11. After a plaintiff shows irreparable harm and that the harm balance tips in her favor, a district court must grant preliminary injunctive relief if plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Safety-Kleen, Inc.*, 274 F.3d at 858-59 (*quoting Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)). As shown herein and in Plaintiffs' Verified Complaint, Defendant's violations of Plaintiffs' constitutional rights presents a question to this Court so serious and substantial that they are fair grounds for litigation.

12. When a local community is acting "to protect itself against an epidemic threatening the safety of all," the court should interfere for the protection of parties when such actions are arbitrary, are performed in an unreasonable manor, or if they go "far beyond what was reasonably required for the safety of the public" under the circumstances. *Jacobson v. Massachusetts*, 197 U.S. 11, 28 (1905).

13. As shown in Plaintiffs' Verified Complaint, Defendant's Proclamations discriminate against interstate commerce on their face, while nondiscriminatory alternatives exist, in violation of the Dormant Commerce Clause. Further, contrary to the Contract Clause of Article

I, Section 10 of the United States Constitution and generally applicable state law, Defendant's Proclamations continue to impair Plaintiffs' ability to perform obligations under their vacation rental agreements that pre-date the Proclamations. The Proclamations have deprived Plaintiffs of their constitutional right to engage in lawful interstate commerce and of the use and enjoyment of their protected property interests without a factual or rational basis, violating the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. Meanwhile, Bald Head Island allows landlords and property managers with tenants having leases with a duration of three months or more to perform their obligations under rental agreements, and allows their tenants, employees and contractors to access the Island without any factual or rational basis for the disparate treatment, depriving Plaintiffs of equal protection under the law.

**Dormant Commerce Clause Violation**

14. The United States "Supreme Court has interpreted the Commerce Clause [in Art. I, § 8, cl. 3 of the United States Constitution] as also having a negative implication, often called the 'Dormant Commerce Clause.'" *Sandlands C&D, LLC v. Horry*, 737 F.3d 45, 51 (4th Cir. 2013). As a general rule, "states [and municipalities] generally cannot pass protectionist measures that favor in-state actors over out-of-state actors . . . [even if done by] protectionist measures that target all outsiders, not just those from other states." *Id.* (citing *Dean Milk Co. v. Madison*, 340 U.S. 349, 354 (1951)). Under the Dormant Commerce Clause, a city may not impose an undue burden on interstate commerce, "even in the exercise of its unquestioned power to protect the health and safety of its people, if reasonable nondiscriminatory alternatives, adequate to conserve legitimate local interests, are available." *Dean Milk Co. v. Madison*, 340 U.S. 349, 354 (1951).

15. The Proclamations burden commerce by banning short-term rentals that Plaintiffs previously solicited and entered into with out-of-state residents. *See Camps Newfound/Owatonna,*

Page **5** of **15**

Case 7:20-cv-00086-BO   Document 7   Filed 05/20/20   Page 5 of 15

*Inc. v. Town of Harrison*, 520 U.S. 564, 573 (1997); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964); *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 568 F.3d 500, 506 (5th Cir. 2011) (noting the "Supreme Court has repeatedly addressed the effects on interstate commerce of hotels, motels, and other elements of the hospitality industry.").

16. A discriminatory law that burdens commerce is presumed unconstitutional, and will be upheld only by a showing that "the protectionist measure serves a legitimate local purpose that could not be served by alternate, nondiscriminatory means." *Sandlands*, 737 F.3d at 51. A restriction on commerce is discriminatory when "it benefits in-state economic interests while burdening out-of-state economic interests." *Id.* A non-discriminatory law affecting interstate commerce is unconstitutional when "'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

17. Bald Head Island's Proclamations are discriminatory on their face. The First Proclamation, reaffirmed in the Fourth Amended Proclamation, expressly allowed tenants under leases with a duration of three months or more to remain on the Island, while requiring all other short-term tenants, including out-of-state residents, to vacate Bald Head Island. It further restricted access to the Island to "property owners and residents, business owners and their respective employees and contractors, and municipal employees and contractors." As a result, per the North Carolina Real Estate Commission, Plaintiffs are required to refund monies across state lines to the out-of-state residents with whom Plaintiffs had a vacation rental agreement.

18. There are reasonable, nondiscriminatory means to further any legitimate governmental interest of Bald Head Island. This case is unlike true quarantine laws that "simply prevented traffic in noxious articles, whatever their origin," *Chemical Waste Management v. Hunt*,

504 U.S. 334, 336 (1992), as Bald Head Island ended the restrictions on construction activities and allows hundreds of non-residents and non-property owners onto the Island each day, regardless of their origin or state of residency. Bald Head Island could follow applicable public health guidelines and allow out-of-state tenants of short-term vacation rentals onto the Island while still protecting any legitimate interest.

19. Under EO 138 and during Phase 1 of North Carolina's economic recovery, "hotels and short-term vacation rentals are allowed." (Compl. Ex. 4 p 6). In so allowing short-term rentals, the Governor's office provided the following public health guidance:

> [I]ndividuals should practice Stay at Home, Recommendations to Promote Social Distancing and Reduce Transmission, and other COVID-19 mitigation measures at any short-term rental. Rental landlords should follow CDC guidelines on cleaning hotels and rental units including using an EPA-approved disinfectant for COVID-19 between customers.

(*Id.*).

20. Governor Cooper's public health guidelines evidence alternative, nondiscriminatory means to further any legitimate governmental interest of Bald Head Island. Plaintiffs pledge to practice public health guidelines, including those under EO 138, while engaging in interstate commerce in the short-term rental market as permitted under EO 138.

21. As such, Defendant's enforcement of its ban of short-term rentals should be precluded during the pendency of this action.

**Contract Clause Violation**

22. The Contract Clause states, "No State shall . . . pass any . . . law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. Once a plaintiff shows a substantial impairment of a contractual relationship, the court must determine if the municipality can justify the impairment by demonstrating the impairment serves a "significant and legitimate" public

Page **7** of **15**

Case 7:20-cv-00086-BO    Document 7    Filed 05/20/20    Page 7 of 15

purpose and is an appropriate and reasonable way to advance a "significant and legitimate public purpose." *Sveen v. Melin*, --U.S.--, 138 S. Ct. 1815, 1821-22 (2018*); see also Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983).

23. Plaintiffs had contracts consisting of vacation rental agreements with private actors for vacation rentals scheduled to occur during the period of March 19, 2020 through May 27, 2020, and thereafter. The Proclamations' ban of all short-term rental operations from March 19, 2020 through at least May 27, 2020 substantially and unreasonably impairs Plaintiffs' contractual obligations and rights under the vacation rental agreements, making Plaintiffs wholly unable to fulfill the contractual obligations or obtain benefits thereunder.

24. On April 28, 2020, the North Carolina Real Estate Commission issued a Memorandum regarding N.C. Gen. Stat. §§ 42A-1 *et seq.* and COVID-19 restrictions. The NCREC concluded that "under the VRA, N.C. Gen. Stat. §§ 42A-1 *et seq.*, landlords and real estate brokers must provide refunds to tenants who will no longer be able to use their vacation rental home due to State of North Carolina municipal COVID-19 response measures restricting access." (Compl. Ex. 6). This shows the Proclamations undermine Plaintiffs' contractual bargain, interfere with Plaintiffs' reasonable expectations, and prevent Plaintiffs from safeguarding or reinstating their rights.

25. Bald Head Island has little governmental interests in regulating whether property owners and managers may enter into short-term rentals under state law. Per N.C. Gen. Stat. § 160A-424(c),[1] "In no event may a city . . . adopt or enforce any ordinance that would require any owner or manager of rental property to obtain permission from the city to lease or rent residential real property . . . ." This prohibition expressly applies to vacation rentals under N.C. Gen. Stat. §

---

[1] This provision was affected by N.C. Session Law 2019-111, s. 2.3 and will be recodified as N.C. Gen. Stat. § 160D-12-7(c) effective January 1, 2021.

42A-3(a). These statutes also show that a prohibition of short-term rentals is generally an inappropriate way to advance a municipality's governmental interests in North Carolina.

26. Even if the Proclamations were originally passed under an emergency, "it is always open to judicial inquiry whether the exigency still exists upon which the continued operation of the law depends." *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 442 (1934).

27. Here, any exigencies that may have justified a ban on short-term rentals no longer exists as evidenced by the fact that EO 138 expressly lifts any ban on short-term rentals. This is further evidenced by Bald Head Island lifting the restriction on construction activity on Bald Head Island, resulting in hundreds of individuals visiting Bald Head Island each day. As such, Plaintiffs respectfully contend they have shown at least a litigable issue regarding Bald Head Island's violation of the Contract Clause of the United States Constitution, making injunctive relief appropriate.

**Due Process Violation**

28. Under the Fifth Amendment to the United States Constitution, applicable here under the Fourteenth Amendment, no person shall "be deprived of life, liberty, or property, without due process of law."

29. The United States Supreme Court has made clear that an unreasonably vague or ambiguous statute or ordinance will be held unconstitutional under the due process clause because regulated parties should know what is required of them so they may act accordingly, and precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. *FCC v. Fox TV Stations*, Inc., 567 U.S. 239, 253 (2012); *see also NAACP Anne Arundel County v. City of Annapolis*, 133 F. Supp. 2d 795, 807-08 (D. Md. 2001).

30. The First Proclamation states "[e]ffective immediately, there will be no new rental occupancies of any nature or duration allowed on the Island." However, the Proclamation does not define "new rental occupancies," or whether it applies only to vacation rental agreements entered into after March 19, 2020 or applies to vacation rental agreements entered into before March 19, 2020 as well.

31. Further, the First Proclamation states "[o]nly property owners and residents, business owners and their respective employees and contractors, and municipal employees and contractors shall be admitted to the Island after 6:00 PM today, March 19, 2020." However, the Proclamation does not define "residents" or "business owners." As such, the Proclamation is unreasonably vague as to whether a tenant of a vacation rental or under another lease is considered a "resident," including how long a lease term must be to make the tenant a "resident." It additionally leaves many other unanswered questions. For example, is the owner of a business outside of North Carolina permitted to access the Island as a tenant of a vacation rental?

32. For these reasons, Defendant should be enjoined from enforcing the Proclamations during the pendency of this litigation, and thereafter when this Court hears the merits.

33. Furthermore, a plaintiff may prevail on a substantive due process claim by showing (1) that they had a protected property right, and (2) that defendant arbitrarily or capriciously deprived them of that right, or lacks a rational basis. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827-828 (4th Cir. 1995); *Browning-Ferris Indus. v. Wake Cty*, 905 F. Supp. 312, 317, 319 (E.D.N.C. 1995) (citing *Scott v. Greenville Co.*, 716 F.2d 1409 (4th Cir. 1983)).

34. The Proclamations ban Plaintiffs from exercising their constitutional right to engage in lawful interstate commerce with out-of-state residents/ tenants of vacation rentals on Bald Head Island. Plaintiffs also have a protected property right in their vacation rental agreements,

and their contractual rights to monies received under vacation rental agreements for vacation rentals scheduled to occur from March 19, 2020 through at least May 27, 2020, absent the Proclamations. *Browning-Ferris Indus.*, 905 F. Supp. at 318 (noting a "party may acquire a vested right if it, in good faith, has made a substantial beginning towards the party's intended use of the land."); *see also Mertik v. Blalock*, 983 F.2d 1353, 1360 (6th Cir. 1993) ("*Roadway Express* makes clear that a private contractual right can constitute a property interest entitled to due process protection from governmental interference under federal constitutional law."). Further, Plaintiff Blue Pearl has a right to the use and enjoyment of Blue Pearl's Vacation Rental. *See id.*

35. As noted, Bald Head Island has little to no legitimate public interest in banning short-term rentals under North Carolina law. N.C. Gen. Stat. § 42A-3(a); N.C. Gen. Stat. § 160A-424(c).

36. Even during an emergency, Bald Head must have a factual basis for infringements on Plaintiffs' constitutional rights. *U.S. v. Chalk*, 441 F.2d 1277, 1282 (4th Cir. 1971); *see also Virginia Agric. Growers Ass'n v. Donovan*, 597 F. Supp. 45, 51 (W.D. Va. 1984) ("An order to consider a matter expeditiously is not a mandate to be arbitrary, capricious, irrational or slopy." (internal quotations omitted)).

37. The ban of short-term rentals is not part of any comprehensive plan developed by Bald Head Island related to COVID-19. *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 282 (4th Cir. 2008) (noting a zoning decision was procedurally irregular when made without reference to a comprehensive plan as weighing in favor of a finding of a lack of due process). As evidenced by EO 138, there is not any public health rationale for continuing the ban of short-term rentals.

38. Simply, there is no factual or rational basis supporting Bald Head Island's continued ban of short-term rentals. As such, especially considering the general prohibition of such measures under N.C. Gen. Stat. § 160A-424(c), the ban should not be upheld during the pendency of this action without a factual basis. *See Chalk*, 441 F.2d 1277, 1282.

**Equal Protection Violation**

39. "The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

40. As shown in Plaintiffs' Complaint, the Proclamations deprive Plaintiffs of their fundamental rights and freedoms, yet allow others similarly situated, including property owners and managers with tenants for a rental period of three (3) months or more, and employees and contractors of residents and business owners, to access Bald Head Island and engage in commercial activity, including the rental market.

41. Bald Head Island lifted restrictions on construction activities after considering a proposal from contractors about their plan for public health. As a result, hundreds of individuals are on the Island on daily basis. However, even though short-term rentals are expressly allowed under EO 138, Bald Head Island refuses to lift restrictions on short-term rentals although Plaintiffs previously submitted a proposal in line with public health guidelines for short-term rentals.

42. Plaintiffs respectfully submit that Defendant's disparate treatment of Plaintiffs as compared to those similarly situated, burdens Plaintiffs' fundamental rights, including the right to engage in interstate commerce, without a rational basis or public health rationale, violating the equal protection guarantee of the Fourteenth Amendment.

43. It is for all these reasons that Plaintiffs strongly assert that they have a reasonable likelihood of success on the merits.

**Granting Plaintiffs' Request Promotes the Public Interest**

44. It is well-established that constitutional freedoms are favored: "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd' sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) (quotations omitted).

**Conclusion**

Plaintiffs Blue Pearl Partners, LLC and Tiffany's Beach Rentals, Inc. respectfully ask the Court grant their Motion for a Temporary Restraining Order, to engage in interstate commerce and perform their obligations under vacation rental agreements by restraining Defendant from enforcing its ban on short-term rentals or restricting access of vacation rental tenants, allowing Plaintiffs to act in accordance with Governor Cooper's EO 138.

WHEREFORE, Plaintiffs respectfully ask the Court to grant the Motion and issue its requested relief and such other relief as it deems necessary.

This the 20th day of May, 2020

MCANGUS GOUDELOCK & COURIE, LLC

/s/ Luke A. Dalton<br>
Luke A. Dalton<br>
State Bar No. 41188<br>
1001 Military Cutoff Road, Ste. 310<br>
Wilmington, NC 28405<br>
Telephone: (910) 726-1125<br>
Facsimile: (910) 920-9157<br>
Email: Luke.Dalton@mgclaw.com

## CERTIFICATION OF WORD COUNT AND COMPLIANCE

Pursuant to Local Rule 7.2(f), on this Wednesday May 20, 2020, the undersigned hereby certifies in reliance on the word count generated by word processing software that this Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order contains 3,952 words.

MCANGUS GOUDELOCK & COURIE, LLC

/s/ Luke A. Dalton
Luke A. Dalton
State Bar No. 41188
1001 Military Cutoff Road, Ste. 310
Wilmington, NC 28405
Telephone: (910) 726-1125
Facsimile: (910) 920-9157
Email: Luke.Dalton@mgclaw.com

| | |
|---|---|
| BLUE PEARL PARTNERS, LLC, <br> AND TIFFANY'S <br> BEACH RENTALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MAYOR J. ANDREW SAYRE, IN HIS <br> OFFICIAL CAPACITY AS MAYOR <br> OF THE VILLAGE <br> OF BALD HEAD ISLAND, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2020, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, and I hereby certify that I have e-mailed the document to the following non-CM/ECF participants:

Charles S. Baldwin, IV
Attorney for the Village of Bald Head Island
Email: cbaldwin@brookspierce.com

This the 20th day of May, 2020.

/s/ Luke A. Dalton
Luke A. Dalton
MCANGUS GOUDELOCK & COURIE, LLC
1001 Military Cutoff Road, Ste. 310
Wilmington, NC 28405
Phone: (910)726-1125
Facsimile: (910) 920-9157
Email: Luke.Dalton@mgclaw.com
N.C. State Bar No. 41188